UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GS HOLISTIC, LLC, | No. 2:22-cv-02037-WBS-CKD |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| AA 110 d/b/a DIXON SMOKE SHOP, et al., | |
| Defendants. | |

Plaintiff, GS Holistic, LLC, moves the court for default judgment against defendants Unlimited Smoke and Vape Paradise, doing business as Smoke Paradise ("Smoke Paradise"), and Abdo Alghazali. (ECF No. 43.) Specifically, plaintiff seeks a default judgment against defendants for statutory damages in the amount of $150,000.00 on claims of trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. 1051 et seq., costs of $980.20, and injunctive relief.

Defendants have neither appeared nor opposed the motion. The court previously ordered this motion submitted without appearance and argument pursuant to Local Rule 230(g) (ECF No. 48.) For the reasons set forth below, the undersigned recommends the motion for default judgment be granted in part and denied in part, with statutory damages awarded in the amount of $5,000.00 pursuant to 15 U.S.C. § 1117, and costs awarded in the amount of $532.00.

1

## I. BACKGROUND

Since 2020, plaintiff has marketed and sold glass infusers and accessories using the well-known trademark "Stündenglass." (ECF No. 30, ¶ 8.) Plaintiff is the owner of three federally registered trademarks in association with these goods:

    a. U.S. Trademark Registration Number 6,633,884 for the standard character mark "Stündenglass" in association with goods further identified in international class 011;

    b. U.S. Trademark Registration Number 6,174,292 for the design plus words mark "S" and its logo in association with goods further identified in international class 034,

    c. U.S. Trademark Registration Number 6,174,291 for the standard character mark "Stündenglass" in association with goods further identified in international class 034.

(Id., ¶ 11.)

Plaintiff has used the Stündenglass trademarks in commerce continuously since 2020 in connection with the manufacturing of glass infusers and accessories. (ECF No. 30, ¶ 13.) Plaintiff has expended substantial time, money, and other resources in developing, advertising, and promoting its trademarks, resulting in wide public recognition of its products as being high-quality. (Id., ¶¶ 13-21.) Plaintiff's products have a higher sales value than other similar products, and plaintiff's products have been targeted by counterfeiters. (Id., ¶¶ 21-23.)

Plaintiff initiated this action on November 9, 2022, asserting claims for Federal Trademark Counterfeiting and Infringement, 15 U.S.C. § 1114, and Federal False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a). (See ECF No. 1.) Returns of service filed in February 2023 indicated several named defendants had been served. (See ECF Nos. 8-13.)

On August 3, 2023, plaintiff sought leave to amend the complaint for the purpose of substituting the correct alleged infringers as defendants for wrongly named defendants. (ECF No. 28.) The court granted the motion (ECF No. 29), and plaintiff filed the first amended complaint on September 11, 2023, naming Smoke Paradise and Abdo Alghazali as defendants. (ECF No. 30). Smoke Paradise is alleged to be a company incorporated in California with its principal place of business at 1924 N. Texas Street in Fairfield, California. (Id., ¶ 6.) Defendant Alghazali allegedly owns, manages, or operates Smoke Paradise. (Id., ¶ 7.)

1     The amended complaint alleges plaintiff's investigator purchased a Glass Infuser with Stündenglass Marks affixed to it for $350.00 from Smoke Paradise, and, upon inspection, determined it was counterfeit. (ECF No. 30, ¶¶ 29-30.) Plaintiffs never authorized defendants to sell any merchandise bearing any of the Stündenglass Marks. (Id., ¶ 32.)

     A return of service filed on February 12, 2024, indicates defendant Alghazali was served by substituted service with delivery to Bobby "Doe" – Manager/Accepting service at 1924 N. Texas Street in Fairfield, California. (ECF No. 34 at 1.) The registered process server provided a declaration setting forth prior attempts at personal service. (Id. at 3.) The process server also indicated the service documents were subsequently mailed to defendant Alghazali. (Id. at 4.) Based on the information in the return of service, it appears defendant Alghazali was properly served. See Fed. R. Civ. P. 4(e)(1) (an individual may be served by following state law in the state where the district court is located); Cal. Civ. Proc. Code § 415.20(b) (providing for substituted service for an individual in lieu of personal delivery when the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, and which may be accomplished by leaving a copy of the summons and complaint at the person's usual place of business in the presence of a person apparently in charge and by thereafter mailing copies to the person to be served at the place where the initial copies were left).

     A return of service filed on February 13, 2024, indicates defendant Smoke Paradise was served through service to an agent—defendant Alghazali—by substituted service with delivery to Gianna Saeidah, described as "Clerk/Accepting Service." (ECF No. 38 at 1.) The registered process server indicated the service documents were subsequently mailed to defendant Smoke Paradise. (Id. at 3.) Based on the information in the return of service, it appears defendant Smoke Paradise was properly served. See Fed. R. Civ. P. 4(h)(1)(A) (a corporation may be served in a judicial district of the United States in the same manner as an individual); Cal. Civ. Proc. Code §§ 415.20(a), 416.10 (providing for substituted service for a corporation to a person authorized to receive service of process by leaving a copy of the summons and complaint at the person's usual place of business in the presence of a person apparently in charge of the office and by thereafter mailing copies to the person to be served at the place where the initial copies were left).

Pursuant to plaintiff's request, the Clerk entered default as to both defendants on February 22, 2024. (ECF No. 42.) Plaintiff's motion for default judgment filed on March 28, 2024 (ECF No. 43) is now before the court.

## II. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought if that party fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). The decision to grant or deny an application for default judgment lies within the sound discretion of the district court. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true except for the allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992). Where the pleadings are insufficient, the court may require the moving party to produce evidence in support of the emotion for default judgment. See TeleVideo Sys., Inc., 826 F.2d at 917-18.

Default judgments are ordinarily disfavored. Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986). In making the determination whether to grant a motion for default judgment, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72.

////

////

## III. DISCUSSION

### A. <u>Eitel</u> Factors

#### 1. Possibility of Prejudice to Plaintiff

The court considers whether plaintiff would suffer prejudice if default judgment is not entered. Such potential prejudice to the plaintiff militates in favor of granting a default judgment. See <u>PepsiCo, Inc., v. California Security Cans</u>, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Plaintiff filed the amended complaint against the defendants on September 11, 2023, and defendants have failed to respond to plaintiff's amended complaint or otherwise put forth a defense in this action. The present litigation cannot move forward, leaving plaintiff no recourse other than to seek a default judgment. Accordingly, the first factor weighs in favor of entering default judgment.

#### 2. Merits of the Substantive Claim and Sufficiency of Pleading

The court considers the merits of plaintiff's substantive claims and the sufficiency of the amended complaint together due to the relatedness of the inquiries. The court considers whether the allegations in the amended complaint are sufficient to state a claim on which plaintiff may recover. See <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978); <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1175.

Plaintiff brings two claims: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114 et seq., and (2) unfair competition under the Lanham Act, 15 U.S.C. § 1125 et seq. (ECF No. 30 at ¶¶ 52-69.) Courts have noted there is "no material difference in the law governing relief" for these claims. <u>Menendez v. Saks & Co.</u>, 485 F.2d 1355, 1375 n.22 (2nd Cir. 1973), rev'd sub nom. on other grounds, <u>Alfred Dunhill of London, Inc. v. Republic of Cuba</u>, 425 U.S. 682 (1976); <u>Walter v. Mattel, Inc.</u>, 210 F.3d 1108, 1111 (9th Cir. 2000) ("The test for false designation under the Lanham Act, as well as the… statutory unfair competition claims, is whether there was a 'likelihood of confusion.'") (citation omitted), modified on other grounds by <u>Surfvivor Media, Inc. v. Survivor Prods.</u>, 406 F.3d 625 (9th Cir. 2005).

To state a claim for unfair competition or trademark infringement under the Lanham Act, a complaint must allege the plaintiff: "(1) ... has a protectible ownership interest in the mark; and

(2) the defendant's use of the mark is likely to cause consumer confusion…." Department of Parks and Recreation for State of California v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir. 2006). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." Dreamwerks Production Group, Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998); see also AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979) ("Sleekcraft") (setting forth eight factors of consideration) abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prod., 353 F.3d 792, 810 n.19 (9th Cir. 2003). The test set forth in Sleekcraft is pliant: some factors are much more important than others, and the relative importance of each is case-specific. Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp., 174 F.3d 1036, 1054 (9th Cir. 1999) (noting it is often possible to determine whether there is likelihood of confusion after considering a subset of factors).

Pertinent here, federal registration of a trademark or trademarks is prima facie evidence of ownership of a valid trademark. 15 U.S.C. § 1057(b); Brookfield Communications, 174 F.3d at 1047. The amended complaint's allegations adequately allege a protectible interest. The remaining element is the issue of confusion.

The amended complaint alleges defendant, Smoke Paradise, has distributed, provided, marketed, advertised, promoted, offered for sale, and sold glass infusers and water pipes with marks that are confusingly identical or similar to the Stündenglass Marks. (ECF No. 30, ¶¶ 38-40.) The amended complaint alleges defendant Alghazali owned, managed, and/or operated Smoke Paradise. (Id., ¶ 7.) The amended complaint also alleges defendant Alghazali regularly exercised authority to purchase products for resale and decide which products Smoke Paradise offered for sale and that defendant Alghazali authorized, directed, and/or participated in the offer for sale of the counterfeit goods at issue. (Id., ¶¶ 7, 33.)

According to the amended complaint, plaintiff's investigator purchased a glass infuser with the Stündenglass Marks affixed to it at Smoke Paradise and determined the infuser to be counterfeit. (ECF No. 30, ¶¶ 29-30.) The amended complaint's allegations establish the strength of the Stündenglass Marks, similarity of the marks affixed to the counterfeit product purchased,

1  and proximity of the alleged counterfeit goods, sufficient to show a likelihood of confusion. See
2  JUUL Labs, Inc. v. Chou, 557 F. Supp. 3d 1041, 1052 (C.D. Cal. 2021) ("counterfeit marks are
3  inherently confusing"); Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp., 689 F.
4  Supp. 2d 585, 597 (S.D.N.Y. 2010) ("To find a likelihood of confusion, a court need only
5  determine that the items at issue are counterfeit and that the defendant distributed, offered for
6  sale, or sold the items."). The amended complaint states cognizable claims for trademark
7  infringement and unfair competition under the Lanham Act. The Eitel factors considering the
8  merits of the claim and the sufficiency of the pleading weigh in favor of granting the default
9  judgment.

### 3. The Sum of Money at Stake

11  Under the fourth factor cited in Eitel, "the court must consider the amount of money at
12  stake in relation to the seriousness of defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at
13  1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D.
14  Cal. 2003). This requires the court to assess whether recovery sought is proportional to the harm
15  caused by defendants' conduct. See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1012 (C.D.
16  Cal. 2014) ("Default judgment is disfavored where the sum of money at stake is too large or
17  unreasonable in relation to defendant's conduct"). Here, plaintiff seeks statutory damages in the
18  amount of $150,000.00.

19  The award sought is substantial. The remedies analysis set forth below recommends that a
20  lower amount of statutory damages would be more proportional to the seriousness of the
21  defendants' conduct in this case. The requested statutory damages do not weigh against entry of
22  default judgment since the court can order a lower amount.

### 4. The Possibility of a Dispute Concerning Material Facts

24  The court may assume the truth of well-pleaded facts in the amended complaint following
25  the clerk's entry of default. Thus, the court finds no likelihood that any genuine issue of material
26  fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal.
27  2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk
28  enters default judgment, there is no likelihood that any genuine issue of material fact exists");

1    accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. This
2    factor favors the entry of a default judgment.

### 5. Whether the Default Was Due to Excusable Neglect

The record contains no indication that defendants' default was due to excusable neglect. Due process requires that interested parties be given notice of the pendency of the action and be afforded an opportunity to present their objections before a final judgment is rendered. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). While there is always a possibility that a defendant might appear and claim excusable neglect, where the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion," this factor favors entry of default judgment. Shanghai Automation Instrument Co. Ltd. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). As set forth above, on the record currently before the court, it appears the defendants were properly served with summons and the amended complaint. Despite having been served with the summons and the amended complaint,[1] defendants have failed to respond. The lack of any indication of excusable neglect favors entry of a default judgment.

### 6. Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. But the mere existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." PepsiCo, Inc., 238 F. Supp. 2d at 1177 (citation omitted); see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Rule 55 allows a court to decide a case before the merits are heard if defendant fails to appear and defend. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Although the court is cognizant of the policy in favor of decisions on the merits, that policy does not, by itself, preclude the entry of default judgment.

////

////

---

[1] In this instance, there is no indication that plaintiffs served defendants with the notice of entry of default or the papers in support of the instant motion, but the Federal Rules of Civil Procedure did not require it. See Fed. R. Civ. P 5(a)(2); Fed. R. Civ. P. 55(b)(2).

### 7. Recommendation

Taken together, the Eitel factors support granting the request for default judgment. It is therefore recommended that a default judgment be entered.

### B. Remedies

#### 1. Statutory Damages

Plaintiff's motion seeks an award of statutory damages under the Lanham Act, 15 U.S.C. § 1117(c), in the amount of $150,000.00 ($50,000.00 per mark). (ECF No. 43 19-21.) The Lanham Act authorizes awards of statutory damages "as the court considers just" of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c)(1). The Lanham Act further authorizes awards of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed" if the court "finds that the use of the counterfeit mark was willful[.]" Id. at § 1117(c)(2). The court has discretion to award statutory damages between the minimum and maximum, so long as they are sufficient to deter future trademark infringement. Playboy Enters., Inc. v. Baccarat Clothing Co., Inc., 692 F.2d 1272, 1274-75 (9th Cir. 1982) (cautioning against permitting a situation in which "the counterfeiter escapes without suffering the economic harm necessary to serve as a deterrent to future infringing activities"); see also Yelp Inc. v. Catron, 70 F. Supp. 3d 1082, 1089 (N.D. Cal. 2014) (noting that "[w]hile the plaintiff in a trademark infringement case is entitled to damages that will serve as a deterrent, it is not entitled to a windfall").

In determining appropriate statutory damages to award on default judgment, district courts consider whether the amount of damages requested bears a "plausible relationship" to plaintiff's actual damages. Yelp Inc., 70 F. Supp. 3d at 1102. Here, plaintiff submits affidavits of Christopher Folkerts, plaintiff's Chief Executive Officer. (ECF No. 43-4 & 43-5.) Folkerts avers that sales for Stündenglass products were approximately $10,800,000.00 in 2022 and would have been an estimated $45,300,000.00 if not for the flood of counterfeit products. (ECF No. 43-5, ¶ 14.) This estimation is based on Folkerts' industry knowledge and investigators' determination that more than one-fifth of 4,954 stores visited around the country are selling counterfeit

products, but otherwise, there is no explanation of how it was determined. (Id.) Significantly, the evidence submitted in support of the motion for default judgment does not directly address the damages directly caused by defendants' conduct.

Folkerts avers that on October 28, 2022, Smoke Paradise sold "the fake product bearing the Stündenglass Marks…" (ECF No. 43-4 ¶ 2.) However, the evidence submitted in support of the motion for default judgment also does not directly address the quantity of counterfeit products sold by the defendants in this case. Similarly, the amended complaint contains no other non-conclusory allegations about defendants' infringing conduct.

Plaintiff's request for $50,000 per mark and $150,000 total in statutory damages is not supported by the affidavit. See, e.g., GS Holistic, LLC v. Alien Smoke Shop, No. 2:22-cv-05622-JLS-DFM, 2023 WL 3402589, at *3 (C.D. Cal. Mar. 17, 2023) (denying similar motion for default judgment without prejudice based, in part, on failure to show that plaintiff's requested damages were proportionate to the amount requested). However, the court keeps in mind that in default judgment cases, "the information needed to prove actual damages is within the infringers' control[.]" Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008). As set forth, the undersigned will recommend a lower amount of reasonable statutory damages than that requested.

The undersigned recommends an award of $5,000.00 as reasonable statutory damages. See, e.g., GS Holistic, LLC v. Nasher, No. 1:23-CV-00285-KJM-JDP, 2024 WL 1994702, at *2 (E.D. Cal. May 6, 2024) (awarding $5,000.00 in statutory damages for the sale of a single counterfeit water pipe); GS Holistic, LLC v. RAB 786 LLC, No. C:23-0321-JLR, 2023 WL 7329269, at *7 (W.D. Wash. Nov. 7, 2023) (same); but see also Sream, Inc. v. Singh, No. 1:18-cv-00987-DAD-BAM, a2018 WL 5819455, at *9 (E.D. Cal. Nov. 5, 2018) (noting "[s]tatutory damage awards by courts [under the Lanham Act] vary widely" and finding an award of $20,000.00 to be reasonable based upon the sale of a single counterfeit water pipe), report and recommendation adopted, No. 1:18-cv-00987 DAD-BAM, 2019 WL 2160358 (E.D. Cal. Feb. 13, 2019); GS Holistic, LLC v. Roseville Smoke n Vape Inc., No. 2:22-cv-2036-DJC-AC, 2023 WL 6279450 (E.D. Cal. Sept. 26, 2023) (awarding $25,000.00 per infringing mark for a total of $75,000.00 in statutory damages).

### 4. Costs

Under the Lanham Act, a plaintiff who establishes that a defendant has violated a trademark "shall be entitled... subject to the principles of equity, to recover ... the costs of the action." 15 U.S.C. § 1117(a). Plaintiff's motion for default judgment seeks an award of costs in the amount of $980.20, consisting of the filing fee ($402.00), process server fees ($163.20), and investigation fees ($415.00). (ECF No. 43-6, ¶ 6.) Plaintiff has not cited any authority for obtaining investigation fees as costs of the action. The plain language "the costs of the action," 15 U.S.C. § 1117(a), does not appear to encompass costs incurred before the case has been filed. See generally Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 573 (2012) ("Because taxable costs are limited by statute and are modest in scope, we see no compelling reason to stretch the ordinary meaning of the cost items Congress authorized..."); Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc., 741 F.3d 955, 958 (9th Cir. 2013) (applying Taniguchi). Accordingly, the undersigned recommends plaintiff be awarded only the filing fee and process server fees as costs of the action.

### 3. Injunctive Relief

The Lanham Act empowers courts "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a). A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief, and must demonstrate the following: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (interpreting similar language in considering a motion for permanent injunctive relief under the Patent Act). The Lanham Act provides, in the case of a motion for a permanent injunction, that a "plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a [trademark] violation." 15 U.S.C. § 1116(a).

11

Here, plaintiff requests a permanent injunction enjoining defendants from

> The import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment, licensing, development, display, delivery, marketing, advertising or promotion of the counterfeit Stündenglass product identified in the complaint and any other unauthorized Stündenglass product identified in the complaint and any other unauthorized Stündenglass product, counterfeit, copy, or colorful imitation thereof[.]

(ECF No. 30, Prayer for Relief.)

Plaintiff argues it is entitled to injunctive relief "[b]y the reasons explained in [its] Complaint and pursuant to 15 U.S.C. § 1116." (ECF No. 43 at 13.) Plaintiff's motion also briefly addresses the factors a court must consider before entering a permanent injunction. (Id. at 21-24.) However, plaintiff's amended complaint describes the sale of one counterfeit glass infuser displaying the Stündenglass Marks, and plaintiff requests a wider injunction relating to "any other unauthorized Stündenglass product, counterfeit, copy or colorful imitation thereof[.]" (ECF No. 43-3 at 2.) The requested permanent injunction is not well supported by plaintiff's investigator's purchase of a single counterfeit glass infuser bearing the Stündenglass Marks. The undersigned declines to recommend that a permanent injunction be entered.

Plaintiff also seeks an order under 15 U.S.C. § 1118 requiring defendants to "deliver up to the Plaintiff for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other materials in their possession, custody, or control bearing any of the Stündenglass Trademarks." (ECF No. 30, Prayer for Relief.) The Lanham Act authorizes but does not require the court to issue an order directing the destruction of articles that infringe upon a trademark. 15 U.S.C. § 1118. Like the request for a permanent injunction, the request for destruction of any article "bearing any of the Stündenglass Trademarks" is not well supported by plaintiff's investigator's purchase of a single counterfeit glass infuser bearing the Stündenglass Marks. Moreover, aside from the investigator's purchase of that single glass infuser, and plaintiff's citation to the statute, plaintiff has not presented any argument or further evidence supporting its entitlement to this relief. (See ECF No. 43 at 24-25.) The undersigned declines to recommend the granting of a destruction order under 15 U.S.C. § 1118.

### IV. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, it is HEREBY RECOMMENDED as follows:

1. Plaintiff's motion for default judgment (ECF No. 43) be granted in part, statutory damages be awarded to plaintiff pursuant to 15 U.S.C. § 1117 in the amount of $5,000.00, and costs be awarded in the amount of $565.20.

2. The court enter judgment against the defendants, Unlimited Smoke and Vape Paradise, doing business as Smoke Paradise, and Abdo Alghazali on the amended complaint's claims of trademark infringement and unfair competition.

3. In all other respects, the motion for default judgment be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: June 5, 2024

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8
GSholi22cv2037.mdj